UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
TODD A. CHAMBERLAIN and
TONYA R. CHAMBERLAIN,
    Debtors

CITIZEN'S BANK OF
SOUTHERN PENNSYLVANIA,
    Objectant

v.

TODD A CHAMBERLAIN and
TONYA R. CHAMBERLAIN,
    Respondents

Chapter 13

Case No.: 1-04-02891MDF

**OPINION**

**Procedural and Factual History**

Before me is the objection of Citizen's Bank of Southern Pennsylvania ("Citizen's") to the Chapter 13 Plan filed by Todd A. and Tonya R. Chamberlain ("Debtors"). Citizen's is a secured creditor holding first, third and fourth mortgages against Debtors' residence. Citifinancial holds the second mortgage. Debtors propose to "strip off" the fourth mortgage alleging there is no equity in the property to which the lien can attach. Citizen's objects to such treatment, invoking 11 U.S.C. §1322(b)(2), which prohibits the stripping off of a lien secured solely by a debtor's residence.

There is no dispute in this case that the property is Debtors' residence; the only issue is whether there is equity to which a lien can attach. The parties' estimates of the value of the property are comparable. Debtors' appraiser assessed the value of the property at $88,900.00, and

1

Citizen's appraiser sets the value at $88,000.00.[1]  Both appraisals were prepared in May 2004, the month in which the petition was filed. In addition to the four mortgages, the property is subject to a delinquent tax claim of $1,140.97.  The amounts of the four mortgages and the tax lien as of the date of the filing of the petition as set forth in the original proofs of claim are as follows:

| | |
|---|---|
| 1st Mortgage (Citizen's) | $58,049.61 |
| 2nd Mortgage (Citifinancial) | $ 9,401.58 |
| 3rd Mortgage (Citizen's) | $20,497.41 |
| 4th Mortgage (Citizen's) | $ 8,649.97 |
| Tax lien (Franklin County) | $ 1,140.97 |

Debtors made a post-petition mortgage payment of $789.42 to Citizen's, $589.42 of which was applied to the outstanding balance on the first and third mortgages.  After receipt of the payment, Citizen's filed amended proofs of claim for the first and third mortgages reducing the first mortgage to $57,706.02 and the third to $20, 242.58.

These facts draw three issues before me: (1) should the delinquent tax claim be included when determining whether there is equity in the property to which the fourth mortgage can attach; (2) what is the appropriate date for calculating the amount of the mortgage claims; and (3) what is the value of the Debtors' residence and thus, the secured interest of the claims? These issues have been briefed by the parties and the matter is ready for decision.[2]

---

[1]Each party in the case was in the unusual position of asserting that the appraisal prepared by their opponent's appraiser more accurately assessed the value of the real estate.

[2]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334.  This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B), (K), (L) and (O).  This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

## Discussion

*a.    Priority of Delinquent Tax Claim*

The parties acknowledge the applicability of *In re McDonald,* 205 F3d 606 (3rd Cir. 2002), which held that a wholly unsecured mortgage is not subject to the anti-modification provisions of Section 1322(b)(2) and may be stripped off. Before I evaluating the secured status of the fourth mortgage, I must determine the priority of the liens that encumber the property. Under the *McDonald* analysis, the lien of a totally unsecured debt may be stripped off if the creditor would not be entitled to receive a portion of the proceeds at a foreclosure sale. *In re McDonald,* 205 F.3d at 608, fn. 1. By statute, unpaid real estate taxes constitute a lien against Debtors' residence superior in priority to existing mortgages. 72 Pa. C.S. §5860.301. Under state law, the tax lien on the Debtors' property would have to be satisfied before any of the four mortgages could be paid. Therefore, the tax lien must be included in the calculation under *McDonald*. The three prior mortgages and the tax lien must be subtracted from the value of the property before I can determine whether there is remaining value to secure the fourth mortgage. *See In re Pond*, 252 F.3d 122 (2d Cir. 2001)(tax lien and three prior liens deducted from property value to determine whether equity was available to secure fourth priority mortgage).

*b.    Valuation Date of Mortgage Claims*

Citizen's filed an original and an amended proof of claim for both the first and third mortgages. The original proofs stated the amount due at the date the petition was filed. The amended proofs stated the principal balances after the post-petition mortgage payment was applied. Before I can calculate the amount of the mortgages and liens, I must determine whether to allow the original or amended proofs of claim. If the amended claims are allowed, there is a

3

greater possibility there will be value available to secure the fourth mortgage. When added together, the amounts of the amended claims for the first and third mortgages and the original claims for the tax lien and second mortgage total $88, 491.15. However, if the amounts in the original claims are used, the total lien amount is $89, 089.57. Not surprisingly, Debtors argue that the amount of their equity should be calculated as of the date of the filing of the petition. Citizen's, on the other hand, argues that the amount of equity should be calculated as of the date of the hearing on the objection to confirmation since the actual loan payoff figure had been reduced.

If a date subsequent to the petition date is the appropriate point to value the claim, whether post-petition mortgage payments were made is a relevant factor. However, the Bankruptcy Code is unambiguous on this point. Although a proceeding to determine the secured status of a claim is brought under 11 U.S.C. § 506(a), this issue turns, not on Section 506(a), but on Section 502(b). Section 506 is employed to determine the extent to which a claim is secured by establishing the value of the collateral securing the claim. But the procedure for claim allowance is a distinct process and subject to the specific provisions of a separate section of the Bankruptcy Code. Section 502(b) specifically states that the value of a claim is determined as of the petition date. Therefore, the post-petition payments made by Debtors are disregarded when the amount of the claim is determined. Since the amounts of the claims are not disputed by Debtors, the total of the tax liens and the first three mortgages is $89,089.57.

    c.    *Value of the Collateral*

The final matter that must be addressed to determine whether or not the fourth mortgage may be stripped off is the value of the property. The value of a secured claim is established

through the process set forth in 11 U.S.C. § 506(a). Citizen's allowed claim on its fourth mortgage is secured if there is value in the real estate above the tax lien and the first three mortgages. If there is no value in the real estate above the prior liens, the fourth mortgage is deemed unsecured. Each party presented a credible appraisal prepared by a certified appraiser. Both were prepared in May 2004 shortly before the hearing on the objection to confirmation of the plan. Neither party raised the issue of the appropriate date for valuing the collateral.[3] Under such circumstances, it is appropriate to value the property at $88,450.00 – the mean of the appraisal figures. *See, In re Rolle,* 218 B.R. 636 (Bankr. S.D. Fla. 1998) (in determining value of debtor's residence, court would split the difference between debtor's expert's appraisal of $22,000 and mortgagee's expert's appraisal of $24,000, where both appraisals were well documented and there was no significant difference in methods used or conclusions reached.) Having found that the property should be valued at $88,450.00 and that the allowed claims of the prior mortgages and tax lien total $89,089.57, I find that the fourth mortgage of Citizen's is totally unsecured and may be stripped off.

---

[3] The majority of cases addressing the appropriate point to value collateral when a Chapter 13 debtor seeks to cram down or strip off a lien adopts the confirmation date. See *In re King*, 2003 WL 2210779 at *2 (Bankr. E.D. Pa 2003) (citing cases). In *In re Wood*, 190 B.R. 788 (Bankr. M.D. Pa. 1996), Judge Thomas held that adoption of <u>any</u> bright line rule would run afoul of the language of Section 506, which directs that the purpose of the valuation be considered as well as the proposed disposition or use of the collateral. He advocated the use of a flexible, multifaceted test that considered administrative matters, bankruptcy policy and the affect the selection of particular dates would have on the parties. *In re Wood*, 190 B.R. at 794-95. Since this issue was not raised by the parties, it will not be addressed by the Court.

Citizen's filed the only objection to Debtor's plan. Therefore, the plan may be confirmed. An appropriate order will follow.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge     (JDK)

Date:   December 29, 2004

*This electronic order is signed and filed on the same date.*